**MEYER LAW GROUP LLP**
  A Limited Liability Partnership
BRENT D. MEYER, Cal. Bar No. 266152
268 Bush Street #3639
San Francisco, California 94104
Telephone:  (415) 765-1588
Facsimile:   (415) 762-5277
Email:       brent@meyerllp.com

**SKOOTSKY & DER LLP**
  A Limited Liability Partnership
ROBERT R. CROSS, Cal. Bar No. 56814
425 California Street, 25th Floor
San Francisco, California 94104
Telephone:  (415) 979-9800
Facsimile:   (415) 979-9821
Email:       rcross@skootskyder.com

Attorneys for Plaintiff
E. LYNN SCHOENMANN

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>E. LYNN SCHOENMANN,<br><br>       Debtor. | BK Case No.: 22-30028-DM<br><br>Chapter 7 |
| STUART SCHOENMANN, as Executor of the Probate Estate of Donn R. Schoenmann,<br><br>       Plaintiff,<br><br>    v.<br><br>E. LYNN SCHOENMANN, an individual,<br><br>       Defendant. | AP Case No.: 22-3105-DM<br><br>**MOTION FOR RECONSIDERATION OF MEMORANDUM DECISION REGARDING CONSOLIDATED ADVERSARY PROCEEDINGS AND REMAINING MAJOR ISSUES IN BANKRUPTCY CASE AND ISSUANCE OF RELATED ORDERS**<br><br>Date:     October 17, 2025<br>Time:    10:00 a.m.<br>Location: 450 Golden Gate Ave., Ctrm. 17<br>           San Francisco, California 94203<br>Judge:   Honorable Dennis Montali |

- 1 -

AP CASE NO. 22-3105-DM

MOTION FOR RECONSIDERATION OF MEMORANDUM DECISION REGARDING CONSOLIDATED ADVERSARY PROCEEDINGS AND REMAINING MAJOR ISSUES IN BANKRUPTCY CASE AND ISSUANCE OF RELATED ORDERS

Case: 22-03105   Doc# 62   Filed: 09/16/25   Entered: 09/16/25 21:42:50   Page 1 of 15

Defendant E. Lynn Schoenmann ("Debtor" or "Defendant") hereby moves (the "Motion") for reconsideration of the *Memorandum Decision Regarding Consolidated Adversary Proceedings and Remaining Major Issues in Bankruptcy Case* (the "Memorandum Decision") [Dkt. No. 60] and the related *Order Abstaining from Deciding Consolidated Adversary Proceedings, Dismissing Them and Granting Relief from Stay* (the "Order") [Dkt. No. 61] issued by the Court in the above-captioned matter.

The Motion is based upon the Notice of Motion, the supporting memorandum of points and authorities set forth herein, the supporting Declaration of Jay D. Crom, CPA ("Crom Decl.") and all exhibits attached thereto, the supporting Request for Judicial Notice ("RJN") and all exhibits attached thereto, all other pleadings on file herein, and such other and further arguments and authority as may be presented at the hearing on the Motion.

## I. INTRODUCTION

Given the contentious history of this Bankruptcy Case, it is understandable that this Court now wishes to abstain and decline to adjudicate all remaining issues between Defendant and the Probate Estate, and instead, allow the Probate Court to resolve all remaining disputes. Although Defendant strongly disagrees with this approach, this Court does not have subject matter jurisdiction to order the forced liquidation of Defendant's ERISA-qualified Profit-Sharing Plan, as the Supreme Court in Patterson v. Shumate, 504 U.S. 753 (1992) specifically recognized this retirement account is *not* property of the estate and *not* available to creditors.

Further, although there are significantly less intrusive alternatives to the forced liquidation of the Profit-Sharing Plan, which will result in tax liability to Defendant or the Bankruptcy Estate in an amount *not less than $167,112*, this Court declined to provide the parties with a meaningful opportunity to address the issue or otherwise adjudicate the merits of the Cash Collateral Motion, which formed the predicate basis for issuance of the Sequestration Order. Under the circumstances, and until such time that this Court actually resolves the merits of the Cash Collateral Motion, it is premature and highly prejudicial to require the forced liquidation of the ERISA-qualified Profit-Sharing Plan, which will have significant and unintended tax consequences for Defendant or the Bankruptcy Estate.

## II. BACKGROUND FACTS

**The Bankruptcy Case and Related Proceedings**

On January 14, 2022 (the "Petition Date"), Defendant filed the Bankruptcy Case under Title 11, Chapter 11 of the United States Code (the "Bankruptcy Case"). (Dkt. No. 1).

On June 30, 2022, Plaintiff filed a *Motion to Prohibit or Condition Debtor's Use of Cash Collateral and for Adequate Protection* (the "Cash Collateral Motion"), which among other things, asserted that there was former community property cash in the aggregate amount of $1,007,109.63 at the time Donn died, and as such, the probate estate had an exclusive interest in 50% of these funds ($503,554.82). (Dkt. No. 104). Curiously, however, the Cash Collateral Motion, summarily and without any supporting legal analysis or authority, characterized those funds that existed as of March 22, 2018 as "cash collateral" and sought "adequate protection" with respect to those funds, although it was tacitly admitted that such funds did not exist as of the Petition Date. (Dkt. No. 104).

Defendant opposed the Cash Collateral Motion on various grounds. (Dkt. No. 117).

First, in the nearly three-year period following the death of Mr. Schoenmann, Defendant freely used all of the former community property funds, including cash, in reliance on the PMA, which assigned all of this property to Plaintiff.

Second, in the Cash Collateral Motion, Plaintiff asserts that "[Defendant] and Donn had $526,501.63 community property funds on deposit in financial institutions" at the time of his passing (2:14-15), of which $396,704.32 was held in an account at UBS (x3820). (Dkt. No. 104-1, p. 3, ¶ 9.c). However, this UBS account held the funds of the ERISA qualified Profit-Sharing Plan. As such, there was less than $130,000 in "community cash" when Donn passed away, all of which was spent long before the Bankruptcy Case was filed.

Third, assuming *argumentum* that there was former community property cash on hand at the time that Donn passed away, there is absolutely no evidence that such cash remained in existence as of the date of the Bankruptcy Case. Indeed, counsel for Plaintiff specifically acknowledged that "all of those accounts are gone, I think. Those are the accounts that, you know, were in existence then." (Dkt. No. 135, 41:6-8).

On July 29, 2022, at the initial hearing on the Cash Collateral Motion, the Court noted that the factual presentation was "confusing" … "[a]nd the math -- the numbers don't match up." (Dkt. No. 135, 40:5-19). "So I still can't figure out what the numbers…" (Dkt. No. 135 at 42:15).

In attempting to resolve the Cash Collateral Motion, the Court immediately turned to a practical solution, which would allow for deferral of consideration of the merits:

> **The Court:** "But listen, at the end of the day, if the debtor sets aside $503,000, are you okay?
>
> **Mr. Lapping:** Yes
>
> **The Court:** Now, we can make it all go away if there is consensus about putting safely $500,000 to protect Donn Schoenmann for now …"

23. Defendant argued that the Court was being asked to make a decision in a "factual void;" the Court acknowledged that there had been no factual showing. (Dkt. No. 135, 48:22-49:11; 50:4-9). However, the Court asserted its inherent authority to freeze funds to preserve the *status quo* as follows:

> "I can't -- if I understand your point about a void record, I started by telling you I couldn't even make the numbers match. You're referring to another number that he didn't complain about. He conceded some of his numbers are confusing… So I don't like to make findings based upon incomplete, confusing facts. So I'll maintain the *status quo* and you guys can figure out a way to maintain at least 503,000 dollars to protect Mr. Lapping and not suffer -- not make Ms. Schoenmann suffer some ERISA penalty."

(Dkt. No. 135, 52:21-53:7).

Following the initial hearing, the Court agreed to defer the hearing, and prior to the continued hearing on the Cash Collateral Motion, Plaintiff and Defendant submitted additional briefs. (Dkt. Nos. 141, 144).

At the continued hearing on the Cash Collateral Motion, the Court was adamant that it was deferring all substantive issues, but would sequester $508,596 as an exercise of its discretionary power over administration of the Chapter 11 estate. (Dkt. No. 155).

Thereafter, Defendant made an *Adequate Protection Proposal* (Dkt. No. 150), which this Court accepted in entering the *Order Sequestering Specified Cash* (the "Sequestration Order"). (Dkt. No. 156). Paragraph 5 of the Sequestration Order specifically provides that "[n]othing contained in this Order or the relief granted by it shall be deemed to implicate or rule upon the merits or substance of the contentions of the Debtor or of Stuart Schoenmann. This Order is entered as an exercise of the Court's plenary control over the administration of the above estate." (Dkt. No. 156).

There are two separate sources of funds subject to the Sequestration Order.

First, there are funds ($388,959) in an ERISA qualified Profit-Sharing Plan (First Republic account x1525) (the "Profit-Sharing Plan"), and since Defendant is older than 71 years old, she is required to take mandatory distributions from the Plan, which are held in a segregated account. Defendant applied to the Bankruptcy Court to subject the 2022 mandatory distribution to the Sequestration Order (see Dkt. No. 315).

Second, there are funds ($118,637) in an IRA Account (First Republic account x1556) (the "Inherited IRA") that Defendant inherited after John Aho passed away on December 18, 2018, which was nearly nine months after Donn passed away. (Dkt. No. 156).

On February 16, 2024, and in order to expedite administration of the Bankruptcy Case by authorizing Trustee to administer or abandon the Profit-Sharing Plan and the Inherited IRA without violating the terms of the Sequestration Order, Defendant filed a *Motion to Dissolve Order Sequestered Specified Cash* (the "Motion to Dissolve"). (Dkt. No. 485). Ultimately, the Bankruptcy Court elected not to adjudicate the merits of the relief requested by Defendant in the Motion to Dissolve, but rather, directed Defendant to commence an Adversary Proceeding against Defendants and seek the exact same relief requested in the motion.

The Profit-Sharing Plan is an ERISA qualified plan that includes a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law. As such, the Profit-Sharing Plan was *never* property of the estate in the Bankruptcy Case under section 541(c)(2) or any other provision of the Bankruptcy Code. See 11 U.S.C. § 541(c)(2); Patterson v. Shumate, 504 U.S. 753 (1992).

On October 4, 2023, and as a belt-and-suspenders approach, Defendant filed amended *Schedule C: Property That You Claim as Exempt*, and in relevant part, claimed an exemption in the entire amount ($340,519.22) of the Profit-Sharing Plan pursuant to California Code of Civil Procedure §§ 704.115(a)(3), (b), (e) (the "Profit-Sharing Plan Exemption"). (Dkt. No. 422). Additionally, Plaintiff also specifically provided that the Profit Sharing Plan is "Not property of the bankruptcy estate" on *Schedule C: Property That You Claim as Exempt*. (Dkt. No. 422).

On April 1, 2024, the Court entered an order approving Trustee's abandonment of the estate's rights, title, and interest in the Profit-Sharing Plan. (Dkt. No. 526).

On May 15, 2024, the Plaintiff objected to Defendant's claim of exemption in both the Profit-Sharing Plan and the Inherited IRA asserting various legal arguments in support of their position. (Dkt. No. 539).

Pursuant to a Stipulation executed between Defendant and Trustee, the deadline for Trustee to file a timely objection to the Profit-Sharing Plan or the Inherited IRA was extended to July 16, 2024. (Dkt. No. 533). After carefully considering the merits of the exemptions and applicable law, Trustee intentionally declined to file any objection to Plaintiff's claim of exemptions in the Profit-Sharing Plan or the Inherited IRA. (See CM/ECF *generally*).

On December 11, 2024, the Court entered an order approving Trustee's abandonment of the estate's rights, title, and interest in the Inherited IRA. (Dkt. No. 630).

**The Sequestration Order Adversary Proceeding.**

On August 16, 2024, and after the Court declined to adjudicate the merits of the Motion to Dissolve, Defendant filed an Adversary Proceeding entitled Schoenmann v. Schoenmann et al., Case No. 24-3035-DM, which sought limited declaratory and injunctive relief related to the Sequestration Order (the "Sequestration Adversary Proceeding"). (AP Dkt. No. 1).

On December 9, 2024, the Court entered an *Order Denying Motion to Abstain and Stay Adversary Proceeding* (the "Order Denying Abstention") which in relevant part, denied Plaintiffs' request to remand the Sequestration Adversary Proceeding to be the Probate Court. (AP Dkt. No. 16). Thereafter, the Court consolidated the Sequestration Adversary Proceeding with the above-captioned matter. (AP Dkt. No. 17).

On December 19, 2024, Plaintiffs appealed the Order Denying Abstention, which is currently pending before the United States District Court. (AP Dkt. No. 18).

On February 7, 2025, this Court entered an *Order Denying Motion for Stay Pending Appeal*, which in relevant part, denied Plaintiffs' request for a stay pending appeal of the Order Denying Abstention. (AP Dkt. No. 38). Plaintiffs never requested entry of a stay pending appeal of the Order Denying Abstention from the United States District Court.

On September 3, 2025, this Court issued the *Memorandum Decision Regarding Consolidated Adversary Proceedings and Remaining Major Issues in Bankruptcy Case* (the "Memorandum Decision") [AP Dkt. No. 60] and the related *Order Abstaining from Deciding Consolidated Adversary Proceedings, Dismissing Them and Granting Relief from Stay* (the "Order") [AP Dkt. No. 61] in the above-captioned consolidated matter.

Defendant hereby seeks reconsideration of the Memorandum Decision and the Order.

## III. LEGAL ARGUMENT

Pursuant to Federal Rule of Civil Procedure 59(e), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 9023, this Court may alter or amend a judgment previously entered in a proceeding. See Fed. R. Civ. P. 59(e). A motion for reconsideration brought under Rule 59 can be granted based on "one or all of the following grounds: (1) to correct manifest errors of law or fact upon which the judgment is based; (2) to allow the moving party the opportunity to present newly discovered or previously unavailable evidence; (3) to prevent manifest injustice; or (4) to reflect an intervening change in controlling law." In re Oak Park Calabasas Condo. Ass'n, 302 B.R. 682, 683 (Bankr. C.D. Cal. 2003) *citing* McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999), *cert. denied*, 529 U.S. 1082 (2000).

Further, Federal Rule of Bankruptcy Procedure 9023(b) provides in relevant part that "[a] motion for a new trial or to alter or amend a judgment must be filed within 14 days after the judgment is entered." Fed. R. Bankr. P. 9023(b). Since this Motion was filed within 14 days after issuance of the Memorandum Decision and the Order, Defendants

///

///

- 7 -

AP CASE NO. 22-3105-DM

MOTION FOR RECONSIDERATION OF MEMORANDUM DECISION REGARDING CONSOLIDATED ADVERSARY PROCEEDINGS AND REMAINING MAJOR ISSUES IN BANKRUPTCY CASE AND ISSUANCE OF RELATED ORDERS

Case: 22-03105    Doc# 62    Filed: 09/16/25    Entered: 09/16/25 21:42:50    Page 7 of 15

**A.  The Court Lacks Jurisdiction to Issue the Memorandum Decision and Order**

As a threshold matter, and as Defendant raised in the *Response Re: Order Regarding Memorandum Decision* [AP Dkt No. 58], at this time, this Court lacks jurisdiction to abstain from deciding those remaining matters in the consolidated Adversary Proceedings and granting Relief from the Automatic Stay, such that the Probate Estate is now authorized to litigate these remaining issues in the Probate Court.

Specifically, earlier this year, this Court rejected these exact same requests by the Probate Estate, which is now currently on appeal before the United States District Court in the matter entitled Schoenmann v. Rund et al., Case No. 3:25-cv-00142-EMC.  Given that this Court previously declined to abstain from adjudicating the consolidated Adversary Proceedings and also declined to grant relief from the automatic stay (11 U.S.C. § 362(a)) for the Probate Estate to litigate any of these issues in the Probate Court, which is currently on appeal, it is axiomatic that this Court does not have jurisdiction to reverse its prior decision and issue relief consistent with the Order.  See Dkt. Nos. 16, 18, 38; see also RJN ¶ 4, Exh. W.

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."  Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982); see also In re Mirzai, 236 B.R. 8, 10 (B.A.P. 9th Cir. 1999) ("if a district court would be forbidden to act because of an appeal pending before the court of appeals, then both the bankruptcy appellate panel and the bankruptcy court would be similarly constrained").

The rule divesting lower courts of jurisdiction over aspects of a case involved in an appeal "is judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time."  United States v. Thorp (In re Thorp), 655 F.2d 997, 998 (9th Cir. 1981) (*quoting* 9 Moore, Fed. Prac. ¶ 203.11, n. 1).  This rule is not absolute.  "For example, a district court has jurisdiction to take actions that preserve the status quo during the pendency of an appeal, but may not finally adjudicate substantial rights directly involved in the appeal."  In re Padilla, 222 F.3d 1184, 1190 (9th Cir. 2000) (citations omitted).  Further, "[a]bsent a stay or supersedeas, the trial court also retains

- 8 -

AP CASE NO. 22-3105-DM

MOTION FOR RECONSIDERATION OF MEMORANDUM DECISION REGARDING CONSOLIDATED ADVERSARY PROCEEDINGS AND REMAINING MAJOR ISSUES IN BANKRUPTCY CASE AND ISSUANCE OF RELATED ORDERS

Case: 22-03105   Doc# 62   Filed: 09/16/25   Entered: 09/16/25 21:42:50   Page 8 of 15

jurisdiction to implement or enforce the judgment or order **_but may not alter or expand upon the judgment_**." Id. (citations omitted) (emphasis added).

At this time, this Court did not have jurisdiction to issue the Memorandum Decision or the Order, which undoubtedly seeks to alter and amend the *Order Denying Renewed Motion for Relief from Stay* [Dkt. No. 629] and the Order Denying Abstention [AP Dkt. No. 16], and in effect, overturn these decisions, which are at the heart of the exact same issues that are currently on appeal before the United States District Court. As such, pursuant to Federal Rule of Civil Procedure 59, this Court should vacate the Memorandum Decision and the Order to correct manifest errors of law or fact upon which these decisions were issued.

### B. The Court Lacks Jurisdiction Over the ERISA-Qualified Profit-Sharing Plan

Section 541(c)(2) of the Bankruptcy Code provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). "The natural reading of [this] provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." Patterson v. Shumate, 504 U.S. 753, 758 (1992).

"The United States Supreme Court has held that an anti-alienation provision in an ERISA-qualified pension plan constitutes such a restriction for purposes of the [section] 541(c)(2) exclusion. In re Rains, 428 F.3d 893, 905-06 (9th Cir. 2005) (*citing* Patterson, 504 U.S. at 760)). "The exclusion is permissive rather than mandatory: 'a debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate pursuant to [section] 541(c)(2)[.]". Id. As such, the "**_bankruptcy court lacks subject matter jurisdiction over excluded ERISA-qualified pension plan funds_**." In re Rains, 428 at 905-06 (*citing* In re McClellan, 99 F.3d 1420, 1423 (7th Cir.1996)) (emphasis added).

Here, in the context of resolving the Sequestration Motion, this Court lacked subject matter jurisdiction over the ERISA-qualified Profit-Sharing Plan, and as such, lacked jurisdiction to issue any orders that deprived Defendant of her lawful rights in the ERISA-qualified Profit-Sharing Plan. Further, as the below dialogue suggests, the Court issued the Sequestration Order

as a placeholder to maintain the status quo, while the Court would later embark on the task of resolving the Cash Collateral Motion, which remarkably never happened:

**The Court:** "The finding of the fact and the conclusion of law, the issue is there is a substantial sum of money in various accounts, and there are very, very serious charges claims about it. Ms. Schoenmann is in bankruptcy, and she simply can voluntarily agree not to make disbursements of this amount of money for the time being while some of these issues get straightened out.

There has to be some sorting out, whether it's by a separate adversary proceeding or new dec-relief action or something. There has to be some resolution of the arguments that Mr. Lapping has made and you've opposed. And I don't have a solution for it at the moment, but I know, as you both know, that bankruptcy courts have an ability to figure out a way to maintain the status quo while they determine the rights.

So the finding I would make is that Ms. Schoenmann is in control of 380,000 dollars, and a good portion of it, particularly the Aho trust portion, is highly contested for a variety of reasons.

**Mr. St. James:** The Aho trust --

**The Court:** And it may be that the contest will fail, but it may be that it won't fail. And the way we maintain the status quo for the short-term is to make sure it doesn't go out the door. And the owner of the money can simply agree that it won't, and that's good enough for me,

- 10 -

AP CASE NO. 22-3105-DM

MOTION FOR RECONSIDERATION OF MEMORANDUM DECISION REGARDING CONSOLIDATED ADVERSARY PROCEEDINGS AND REMAINING MAJOR ISSUES IN BANKRUPTCY CASE AND ISSUANCE OF RELATED ORDERS

Case: 22-03105    Doc# 62    Filed: 09/16/25    Entered: 09/16/25 21:42:50    Page 10 of 15

|    |                  |                                                                                       |
|----|------------------|---------------------------------------------------------------------------------------|
| 1  |                  | So if you would like your client to reject it, then I                                 |
| 2  |                  | guess what I'll have to do is ask Mr. Lapping to bring a                              |
| 3  |                  | new adversary proceeding, under some sort of restraining                              |
| 4  |                  | order, to restrict Ms. Schoenmann's access to some of her                             |
| 5  |                  | funds. And that's not my first choice of how we go about                              |
| 6  |                  | doing this.                                                                           |
| 7  |                  | Again, I find that for you to insist that there be                                    |
| 8  |                  | findings is perfectly right, except it provide it does nothing                        |
| 9  |                  | when the money isn't going anywhere. And you know --                                  |
| 10 | **Mr. St. James:** | I agree.                                                                            |
| 11 | **The Court:**   | -- that it can't go anywhere.                                                         |
| 12 | **Mr. St. James:** | Your Honor --                                                                       |
| 13 | **The Court:**   | Okay. Because if she does --                                                          |
| 14 | **Mr. St. James:** | -- ninety percent --                                                                |
| 15 | **The Court:**   | -- something that is inconsistent with her fiduciary duty as                          |
| 16 |                  | the debtor-in-possession, she might make things worse than                            |
| 17 |                  | they are now.                                                                         |
| 18 | **Mr. St. James:** | I agree. And that's why none of this made any sense to me.                          |
| 19 |                  | But Your Honor, the vast majority of the actual cash that's                           |
| 20 |                  | actually been disputed has always been in the profit-sharing                          |
| 21 |                  | plan and has never gone anywhere. In fact, it's been                                  |
| 22 |                  | increased since the era when they claimed that they had an                            |
| 23 |                  | interest in it.                                                                       |
| 24 |                  | So freezing those funds preserves the status quo and                                  |
| 25 |                  | addresses the only factual issue about which they have any                            |
| 26 |                  | claim. The idea that somehow we have to impound real                                  |
| 27 |                  | cash dollars because they might succeed in an avoidance                               |
| 28 |                  | action is just bizarre, Your Honor. It really is."                                    |

AP CASE NO. 22-3105-DM

- 11 -

MOTION FOR RECONSIDERATION OF MEMORANDUM DECISION REGARDING CONSOLIDATED ADVERSARY PROCEEDINGS AND REMAINING MAJOR ISSUES IN BANKRUPTCY CASE AND ISSUANCE OF RELATED ORDERS

Case: 22-03105    Doc# 62    Filed: 09/16/25    Entered: 09/16/25 21:42:50    Page 11 of 15

(Dkt. No. 155, 33:23-35:23).

This soliloquy aptly demonstrates the precise reason that the Sequestration Order was entered – solely to preserve the status quo while the Court determined the respective rights of Plaintiffs and Defendant *related to* the Cash Collateral Motion. However, it is abundantly clear that Defendant *never* waived any of her rights in the ERISA-qualified Profit-Sharing Plan, Defendant *never* consented to authorize this Court to exercise jurisdiction over the ERISA-qualified Profit-Sharing Plan, and this Court *never* adjudicated the rights of the parties with respect to the Cash Collateral Motion. (Dkt. No. 156).

Further, Paragraph 5 of the Sequestration Order specifically acknowledges that "[n]othing contained in this Order or the relief granted by it shall be deemed to implicate or rule upon the merits or substance of the contentions of the Debtor or of Stuart Schoenmann. This Order is entered as an exercise of the Court's plenary control over the administration of the above estate." (Dkt. No. 156, ¶ 5).

However, under these circumstances, this Court never had jurisdiction over the ERISA-qualified Profit Sharing Plan, and as such, it is an extrajudicial act for the Court to order the forced liquidation of the ERISA-qualified Profit-Sharing Plan. In re Rains, 428 F.3d at 905-06.

### C. Forced Liquidation of the Profit-Sharing Plan Will Create Avoidable, and Unnecessary Tax Liability for Defendant or the Bankruptcy Estate

The practical effect of the Memorandum Decision and the Order is that the forced liquidation of the Profit-Sharing Plan and subsequent transfer of the net proceeds to the Clerk of the United States Bankruptcy Court is that there is a taxable event in which Defendant would be personally liability for income tax in 2025 in the aggregate amount of approximately $167,112, or alternatively, the Bankruptcy Estate could be liable for such tax consequences if the Profit-Sharing Plan was deemed alienated or encumbered in 2022 upon issuance of the Sequestration Order. See Crom Decl. ¶¶ 4-8. This harsh outcome creates a manifest injustice, as Defendant (or the Bankruptcy Estate) has absolutely no recourse against any party if (when) Defendant is determined the rightful owner of the Profit-Sharing Plan. As set forth below, there are significantly less intrusive alternatives that this Court should consider rather than requiring the

- 12 -

AP CASE NO. 22-3105-DM

MOTION FOR RECONSIDERATION OF MEMORANDUM DECISION REGARDING CONSOLIDATED ADVERSARY PROCEEDINGS AND REMAINING MAJOR ISSUES IN BANKRUPTCY CASE AND ISSUANCE OF RELATED ORDERS

Case: 22-03105    Doc# 62    Filed: 09/16/25    Entered: 09/16/25 21:42:50    Page 12 of 15

forced liquidation of the Profit-Sharing Plan.

<u>First</u>, since this Bankruptcy Case will remain open for an extended period of time to allow for final administration of the estate by the Trustee and resolution of every appeal taken by the Probate Estate, this Court could simply allow the Sequestration Order to remain in full force and effect, subject only to final disbursement of funds after a final decision from the Probate Court (or other Court of competent jurisdiction) to the rightful owner of the funds. This approach would not require any additional litigation in this Court, and in effect, offer the exact same outcome contemplated by the Memorandum Decision and the Order, but avoids the completely unnecessary forced liquidation of the ERISA-qualified Profit-Sharing Plan and deposit of the funds with the Clerk of the Bankruptcy Court.

<u>Second</u>, as Defendant previously proposed in the *Response Re: Order Regarding Memorandum Decision* [Dkt. No. 58], the Court could: (a) immediately dissolve the Sequestration Order in its entirety without <u>any</u> restriction; (b) stay entry of the order for a period of time (approximately 30 days); and (c) allow the Probate Estate to file appropriate pleadings with a court of competent jurisdiction seeking an issuance of an injunction (TRO or Preliminary Injunction) over use of the funds in the Profit-Sharing Plan and/or the Inherited IRA.

As this Court aptly recognized in the Memorandum Decision, "[t]here is no longer any bankruptcy purpose to be served" (15:1-2) by maintaining the Sequestration Order, and to the extent that the Probate Estate can demonstrate a cognizable claim, entitlement, or right to ownership of the Profit-Sharing Plan, then undoubtedly the Probate Court would issue an appropriate order to protect their interest in the funds. Further, and more importantly, if this Court truly wants to abstain and allow all future proceedings to take place in the Probate Court, then there is no legitimate purpose served by having funds maintained in the registry of the Clerk of the United States Bankruptcy Court, which necessarily will require further orders from this Court to transfer the funds to the rightful owner.

<u>Third</u>, given the infancy (and uncertainty) of the Chapter 11 Case, this Court issued the Sequestration Order as a *provisional remedy* to maintain the status quo until such time that the Cash Collateral Motion could be fully adjudicated. However, nearly three years later, and

AP CASE NO. 22-3105-DM - 13 -
MOTION FOR RECONSIDERATION OF MEMORANDUM DECISION REGARDING CONSOLIDATED ADVERSARY PROCEEDINGS AND REMAINING MAJOR ISSUES IN BANKRUPTCY CASE AND ISSUANCE OF RELATED ORDERS
Case: 22-03105   Doc# 62   Filed: 09/16/25   Entered: 09/16/25 21:42:50   Page 13 of 15

notwithstanding conversion to Chapter 7, this Court has not adjudicated whether, as of the Petition Date, the Probate Estate has any legitimate "cash collateral" rights in property of the estate pursuant to the standard set forth in section 363(a). Until this Court actually determines that the Probate Estate had "cash collateral" as of the Petition Date, which required some form of adequate protection, as requested in the Cash Collateral Motion, it is premature for this Court to require the forced liquidated of the ERISA-qualified Profit-Sharing Plan, which is not property of the estate.

As such, prior to abstaining from adjudicating the remaining issues in the Bankruptcy Case, this Court should adjudicate the merits of the Cash Collateral Motion, once and for all, and issue appropriate orders regarding the respective rights of the parties, including the funds subject to the Sequestration Order, which will avoid the unnecessary forced liquidation of the Profit-Sharing Plan and the corresponding unavoidable tax consequences. Issues related to use of cash collateral are core matters under the Bankruptcy Code (see 28 U.S.C. § 157(b)(2)(M)), and it is patently unfair for this Court to specifically decline to adjudicate the merits of the Cash Collateral Motion, but then bootstrap in the forced liquidation of the ERISA-qualified Profit-Sharing Plan without any analysis or argument, which was gratuitously included as part of the provisional Sequestration Order solely to maintain the status quo pending adjudication of the Probate Estate's claims under section 363.

Under the circumstances, procedural due process and the Bankruptcy Code demand that this Court adjudicate the respective rights of Defendant and the Probate Estate in the Cash Collateral Motion before endeavoring to dispossess Defendant of her lawful rights and protections in the Profit-Sharing Plan, which is *not* property of the estate. How can the Court do indirectly *vis-a-viz* the Sequestration Order (subject the Profit-Sharing Plan to jurisdiction of this Court) what the Court (or the Trustee) cannot do directly? See 11 U.S.C. § 541(c)(2); Patterson, 504 U.S. at 753. The simple answer is that this Court does not have (and never had) subject matter jurisdiction over the ERISA-qualified Profit-Sharing Plan, and taking any further act requiring Defendant to liquidate such retirement account is a further extrajudicial act for which this Court does not have valid subject matter jurisdiction to act.


AP CASE NO. 22-3105-DM

- 14 -

MOTION FOR RECONSIDERATION OF MEMORANDUM DECISION REGARDING CONSOLIDATED ADVERSARY PROCEEDINGS AND REMAINING MAJOR ISSUES IN BANKRUPTCY CASE AND ISSUANCE OF RELATED ORDERS

Case: 22-03105    Doc# 62    Filed: 09/16/25    Entered: 09/16/25 21:42:50    Page 14 of 15

## IV. CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court enter an order granting the Motion in its entirety, vacating the Memorandum Decision and Order, and granting such other and further relief that is just and appropriate under the circumstances.

Alternatively, assuming *argumentum* that this Court determines that it is has jurisdiction notwithstanding the pending appeal, Defendant respectfully request that the Court reconsider and amend the Memorandum Decision and Order and enter an appropriate order ensuring that there is no adverse tax consequence to Defendant (or the Bankruptcy Estate) resultant from the forced liquidation of the Profit-Sharing Plan pending resolution of ownership of this account in a court of competent jurisdiction, and granting such other and further relief that is just and appropriate under the circumstances.

Dated: September 16, 2025          **MEYER LAW GROUP, LLP**

By: /s/ BRENT D. MEYER
    Brent D. Meyer
    Attorneys for Defendant
    E. LYNN SCHOENMANN

MEYER LAW GROUP LLP
268 BUSH STREET #3639
SAN FRANCISCO CA 94104
www.meyerllp.com